23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    vs.

D-1 DAVID TAYLOR and
D-2 MICHELLE BRANNON,

        Defendants.

_____/

Case: 2:25-cr-20560
Assigned To : Berg, Terrence G.
Referral Judge: Altman, Kimberly G.
Assign. Date : 7/24/2025
Description: SEALED MATTER
(LLH)

VIOLATIONS:
Conspiracy to Commit Forced Labor
(18 U.S.C. § 1594(b))

Forced Labor
(18 U.S.C. § 1589)

Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

## INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

    1.    Kingdom of God Global Church (KOGGC), formerly known as Joshua

Media Ministries International (JMMI), is an organization led by DAVID E.

TAYLOR (TAYLOR).

    2.    MICHELLE BRANNON is the Executive Director of KOGGC.

    3.    BRANNON assists TAYLOR in managing KOGGC and carries out

1

TAYLOR's orders.

4.      TAYLOR calls himself Apostle and Jesus's best friend. He claims he has had multiple face-to-face encounters with God and that God has given him the keys to the Kingdom on Earth.

5.      TAYLOR established his first organized call center at 20320 Superior Road in Taylor, Michigan. The purpose of the call centers was to use phone solicitors to raise money from donors, purportedly to support the operations and ministry of KOGGC. TAYLOR has since opened and operated call centers in other locations in the United States including in Missouri, Florida, and Texas.

6.      TAYLOR recruits individuals from across the country to work as phone solicitors at his call centers. Each day, his call center workers are instructed to make a specific number of calls or raise a specific dollar amount.

7.      Call center workers are unpaid.

8.      KOGGC receive millions of dollars in donations each year. TAYLOR uses these donations to support an extravagant personal lifestyle, including a series of residences, airline tickets, personal vehicles, and luxury goods.

9.      KOGGC has received approximately $50 million in donations since 2014.

10.     TAYLOR also recruits individuals to work as his "armor bearers." Armor bearers work as TAYLOR's personal servants by fulfilling TAYLOR's

2

demands.

11.     TAYLOR demanded that his "armor bearers" provide food for him, transport him, maintain his houses and cars, transport women from ministry houses, airports, and other locations to TAYLOR's location, and ensure the women transported to TAYLOR took Plan B emergency contraceptives.

12.     Armor bearers, like call center workers, are unpaid.

13.     If a call center worker or armor bearer does not fulfill TAYLOR's goals or disobeys an order, that individual is punished.

14.     Punishment includes humiliation, sleep deprivation, forced "repentance," additional work, food restrictions, physical assaults, and threats of divine judgment in the form of sickness, accidents, death, and eternal damnation.

15.     TAYLOR regularly claims that if an individual fails to obey his orders and commands, they are defying God and will suffer in Hell.

## COUNT ONE

(Conspiracy to Commit Forced Labor - 18 U.S.C. § 1594(b))

**D-1 DAVID TAYLOR**
**D-2 MICHELLE BRANNON**

16.     The general allegations are included in this count.

## THE CONSPIRACY

17.     On or about April 2013 and continuing through on or about July 2025,

in the Eastern District of Michigan and elsewhere, the defendants, DAVID TAYLOR and MICHELLE BRANNON and others known and unknown to the Grand Jury, did knowingly conspire and agree with each other to provide and obtain the labor and services of one and more persons by any means of, and by any combination of, the following means — (1) by means of force, threats of force, physical restraint, and threats of physical restraint to that person and another person; (2) by means of serious harm and threats of serious harm to that person and another person; (3) by means of the abuse and threatened abuse of law and legal process; (4) and by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint, in violation of 18 U.S.C. § 1594(b).

## THE OBJECT OF THE CONSPIRACY

18.     The object of the conspiracy was for the defendants, and others known and unknown to the grand jury, to obtain the uncompensated labor and services of at least one victim in the Eastern District of Michigan and elsewhere.

## THE MANNER AND MEANS OF THE CONSPIRACY

19.     The defendants controlled practically every aspect of the daily living of the call center workers and armor bearers (hereafter referred to collectively as "victims").

4

20.    TAYLOR created rules to control the victims and BRANNON enforced TAYLOR's rules.

21.    TAYLOR and BRANNON demanded that victims cut off any family or friends that questioned TAYLOR or the righteousness of KOGGC.

22.    TAYLOR and BRANNON demanded that full-time staff give up any outside employment.

23.    Victims slept in the call center facility or in a "ministry" house.

24.    The call centers and "ministry" properties were located at the following addresses:

| | |
|---|---|
| 20320 Superior Road | Taylor, Michigan |
| 1302 Wildhorse Meadows Drive | Chesterfield, Missouri |
| 15400 Timpaige Drive | Chesterfield, Missouri |
| 17329 Hidden Valley Drive | Eureka, Missouri |
| 18205 Hager Lane | Chesterfield, Missouri |
| 1216 Babler Park Court | Wildwood, Missouri |
| 706 Guisando De Avila | Tampa, Florida |
| 1280 South West 38th Street | Ocala, Florida |
| 14380 North Freeway #67 | Houston, Texas |

25.    TAYLOR and BRANNON prohibited dating within KOGGC and

exercised strict control over the victims' personal lives.

26.     TAYLOR and BRANNON demanded that victims apply for a government funded Electronic Benefits Transfer (EBT) card, claiming to be homeless, and give the card to TAYLOR or BRANNON or to KOGGC staff members who reported to TAYLOR and BRANNON.

27.     TAYLOR and BRANNON used the EBT government funds to purchase food for KOGGC staff.

28.     The government money obtained and spent by TAYLOR and BRANNON included funds from the Supplemental Nutrition Assistance Program (SNAP)(formerly known as the Food Stamp Program) which is a federal program that provides nutrition benefits to low-income individuals and families to help them purchase food.

29.     TAYLOR established working groups within KOGGC such as a Facebook team, a finance team, a call center team, and a music team. However, almost all victims were expected to participate in the call center in some capacity to assist in bringing in monetary donations.

30.     TAYLOR used a Facebook Team which sent mass messaging to encourage people to call the call center.

31.     To encourage donations, TAYLOR and BRANNON instructed the victims to falsely state that the donated funds would be spent on charitable works,

such as providing water wells for impoverished communities overseas or supporting victims of human trafficking.

32.     TAYLOR set unobtainable monetary daily, weekly, monthly, and yearly donation goals for his victims. TAYLOR and BRANNON regularly punished the victims who did not meet the required monetary donation quota for the day.

33.     TAYLOR and BRANNON required the victims to work long hours without pay in the call centers or perform other services for TAYLOR.

34.     TAYLOR required victims to follow the orders he created and communicated. If victims disobeyed an order, TAYLOR and BRANNON punished the victim.

35.     The defendants regularly conducted meetings with large groups of members to "rebuke" and publicly humiliate the victims who "disobeyed."

36.     "Rebuking" of a victim included yelling and humiliation, sometimes requiring the victim to get on their knees in an attitude of repentance, physical assaults, and threats of further physical violence. "Rebukings" ranged from several minutes to several hours.

37.     Punishments included additional work, food restrictions, shelter restrictions, psychological abuse, sleep deprivation, physical assault, and threats of spiritual damnation.

38.     TAYLOR and BRANNON frequently communicated orders and

7

punishments via text messages.

39.     The text messages received by victims included the following messages:

a. On or about October 6, 2020, at 5:31am, BRANNON sent a text message to several members of the "media team" including V-3, stating, "Media team no going to sleep until the Mosaic video is done!"

b. On or about May 5, 2021, at 12:26am, TAYLOR texted to DG, his current armor bearer tasked with communicating his orders to KOGGC staff, whose identity is known to the grand jury ". . . you'll have to raise $164k today !! Each hour you fall behind consequences will start . . we will mess with the food . You will fast from the regular food or abstain for a while normally . . . As of now there's a 21 day peanut butter and jelly regiment like before ! . . . [those] who do not push in their calls individually and as a team with the right amount of people and closing numbers at 6pm they don't eat dinner at all.. if they do good afterward this time then at the end of the night they may get a snack before bed but not much and this regiment will go on every day for 21 days until they obey . . Take away the food !! There will be other consequences!! We must make them fast and pray !!"

c. On or about September 11, 2021, at 3:55am, TAYLOR texted to KOGGC

victim DG, "Those in the top 9 that don't do well will stay up and close and stay on top of the delinquents . . . Put the pressure of them not having their time off . . nor food . . they will fast !! . . ."

d.   On or about September 19, 2021, at 9:10pm, TAYLOR texted to KOGGC victim DG, "Michelle and top 9 closers . . How is it in 5 hours you'll have only raised $6k . . THIS IS A MARATHON!! You'll are not taking this serious enough !! THIS HAS TO STOP !! Nobody gets lunch or dinner !! You'll are going to press for another 5 hours !! Make sure no one eats until these numbers change . If they don't change in the next 5 hours you'll are going to work until 4am !!  . . . Now Stand up and tell everyone they are not eating (have they eaten I hope not??) Also that over the next 5 hours if they don't make up for this they are not going to bed tonight until 4am . . "

e.   On or about September 19, 2021, at 10:21pm, TAYLOR texted to KOGGC victim DG, "Michelle and kea Make them all stand and Tell them if the punishment of 4am don't work I'm going to make it worser and worser . . They are going to get their beds out of my house and sleep in the garage !! Everyone piled in there !! This ruthless bootcamp is going to get worse and worse . . until they do what we are telling them . . their will only be soup , bread and water for all the degenerates every day . .

nothing else . . ."

f.  On or about September 21, 2021, at 3:52am, TAYLOR texted to KOGGC
    victim DG, "Let everyone know we have to raise at least $50k by 12
    midnight if this happens the top 9 and those who did well can rest but the
    others who didn't . . . will stay up until 4am and study notes and They will
    wake up at 8am-9am . . . if they don't do good the first 5 hours 9 – 2pm
    they will not get lunch and for dinner they will only have soup and salad
    and water."

g.  On or about September 28, 2021, at 7:57am, TAYLOR texted to KOGGC
    victim DG, "POUR WATER ON EVERYONES FACES THAT'S HALF
    WAY SLEEPING AND NOT WORKING WAKE THEM UP NOW !! .
    . . My next level of judgment tomorrow is that it won't be to just 4am it
    will be every hour you waste in the day will be added on past 4am !! TELL
    THEM ALL TO STAND NOW AND YOU THROW WATER ON
    THEIR FACES ! Especially the people not doing anything or helping
    bring in the money !! You tell them I don't care about them being sick !!
    . . "

h.  On or about October 27, 2021, at 3:23am, TAYLOR texted to KOGGC
    victim DG, ". . . I can't be kind to you letting you start later and sleep in .
    . . I can't be kind with none of you ! If this doesn't change in the next 2

hours !! You'll are working until 4am and then getting up at 8am in the morning to start again !! None of you including top closers will not be able to get away with not working and raising the money we need or meeting our goal when we are in a dire push !! NOW I DONT CARE IF YOU ARE TIRED !! You've crossed the line !! You are going to work all night and get up in the morning !! I want all the names of those who are not helping with this push or doing their work or not showing change .. NOW .. They are going to the homeless shelter !! . . . "

40.     TAYLOR and BRANNON used a group text chat called "Military Bootcamp 5 Taylor" to communicate with victims including V-2. In the group chat, TAYLOR and BRANNON sent the following messages among others:

   a. On or about March 10, 2022, at 11:12pm, TAYLOR texted to the group including V-2, "You'll are not going to bed tonight until you raise this $33K let's go!!"

   b. On or about March 15, 2022, at 1:44am, TAYLOR texted to the group including V-2, "POINT BLANK . . . If you don't work you can't eat."

   c. On or about April 24, 2022, at 9:04pm, TAYLOR texted to the group including V-2, "Repent now niggas   All of you get on your knees now and repent !! NOW !! You have pushed God and I too far !! . . . IM DONE !! EVERYONE GO INTO THE TAMPA GARAGE

TONIGHT ! ! THIS WILL NEVER STOP UNTIL YOU CHANGE COMPLETETLY."

d.  On or about May 12, 2022, at 6:39pm, TAYLOR texted to the group including V-2, "WARNING TO THE WHOLE STAFF - . . . it's too expensive for us to provide for the amount of people who won't learn to close !! So I'm only buying enough for the few at this point who have applied the training and have learned to close !! . . . If you don't work (effectively) and learn closing like we told you then you won't eat !"

e.  On or about May 26, 2022, at approximately 11:35am, TAYLOR texted to the group including V-2, "WARNING – FROM APOSTLE Michelle deal out consequences to all the closers . . . that are not bringing in their amount . . Garage in tampa and take away food now !! I want those in Ocala who supposed to be doing their work but are not punished and out in the garage and their food taken away . . . "

f.  On or about May 27, 2022, at 7:20am, TAYLOR texted to the group including V-2, "JUDGEMENT – These numbers are bad !! . . 7 of the top closers need to go in the garage in tampa now !! . .  Also I want food taken away . . Michele deal out consequences to all the closers . .

that are not bringing in their amount . . Garage in tampa and take away food now !!"

g. On or about July 31, 2022, at 12:01am, TAYLOR texted to the group including V-2, "You are getting up at 8 am also !! I want cold water thrown on those who drag and won't get up !  A big bucket of water . . . MICHELLE . . ENFORCE THIS !!"

h. On or about October 19, 2022, at 11:46pm, BRANNON texted to the group including V-2, "FROM APOSTLE WARNING . . . TENT AND GARAGE JUDGMENT STARTING TONIGHT FOR 7 DAYS IF AFTER 7 – 14 Days There is no change it's the public shelter for 1 solid month."

i. On or about October 20, 2022, at 4:57pm, BRANNON texted to the group including V-2, "WARNING FROM APOSTLE . . . TOP 6 YOUR LOW NUMBERS EACH DAY . . . IT HAS TO STOP NOW . . You will be punished constantly until you obey and train your heart and mind to obey the training . . ."

41.    TAYLOR frequently conducted lengthy meetings, in addition to the victims required work in the call center and on other teams, that resulted in victims not being able to sleep at night.

42.    During the meetings, which often lasted approximately three to six

hours, TAYLOR demanded that victims raise more money, admonished victims for not meeting his monetary goals, explained the power God gave him, rebuked victims for disobedience, and cursed those who stopped working for him or spoke negatively about him.

43.     Due to the amount of work required and lengthy meetings, victims often operated in a state of sleep deprivation.

44.     The defendants required the victims to request permission to leave their housing or the call centers and controlled their access to transportation.

45.     The defendants rarely permitted victims to seek outside medical attention. The defendants often denied victims medical attention altogether.

46.     In some instances, the defendants physically abused victims when TAYLOR was displeased with the actions or behavior of victims.

47.     TAYLOR and BRANNON told victims that, if they leave KOGGC, they will be met with divine judgment in the form of physical harm and eternal damnation.

48.     TAYLOR and BRANNON instilled in the victims a fear of noncompliance and a fear of leaving TAYLOR's organization.

## COUNTS TWO THROUGH NINE

(Forced Labor -18 U.S.C. § 1589)

49.     The general allegations and paragraphs 17- 48 are included in this count.

50.     Beginning on or about the dates listed below, and continuing through on or about the corresponding dates indicated below, in the Eastern District of Michigan and elsewhere, the below-named defendants, and others known and unknown to the Grand Jury, aiding and abetting each other and others, did knowingly provide and obtain the labor and services of the victims referenced in each respective count below, whose identities are known to the Grand Jury, by any one of, and by any combination of, the following means — (1) means of force, threats of force, physical restraint, and threats of physical restraint to that person and another person; (2) by means of serious harm and threats of serious harm to that person and another person; (3) by means of the abuse and threatened abuse of law and legal process; and (4) by means of any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint;  and attempted to do so:

15

| COUNT | DEFENDANT | VICTIM | APPROXIMATE DATES OF FORCED LABOR |
|-------|-----------|--------|-----------------------------------|
| TWO | D-1 TAYLOR<br><br>D-2 BRANNON | V-1 | On or about 2016 through on or about 2022 |
| THREE | D-1 TAYLOR<br><br>D-2 BRANNON | V-2 | On or about 2012 though on or about 2023 |
| FOUR | D-1 TAYLOR<br><br>D-2 BRANNON | V-3 | On or about 2013 through on or about 2023 |
| FIVE | D-1 TAYLOR<br><br>D-2 BRANNON | V-4 | On or about 2016 through on or about 2019 |
| SIX | D-2 TAYLOR<br><br>D-2 BRANNON | V-5 | On or about 2016 through on or about 2017 |
| SEVEN | D-1 TAYLOR<br><br>D-2 BRANNON | V-6 | On or about 2017 through on or about 2019 |
| EIGHT | D-1 TAYLOR | V-7 | On or about 2009 through on or about 2018 |
| NINE | D-1 TAYLOR | V-8 | On or about 2010 through on or about 2015 |

In violation of Title 18, United States Code, Sections 1589, 1594(a), & 2.

16

## COUNT TEN

(Money Laundering Conspiracy - 18 U.S.C. § 1956(h))

**D-1 DAVID TAYLOR**
**D-2 MICHELLE BRANNON**

51.     The general allegations and paragraphs 17 - 48 are included in this count.

52.     Beginning no later than 2018 and continuing through at least July 2025, in the Eastern District of Michigan and elsewhere, the defendants, DAVID TAYLOR and MICHELLE BRANNON, knowingly conspired and agreed with each other and with other persons and entities known and unknown to the Grand Jury to commit money laundering offenses against the United States in violation of Title 18, United States Code, Section 1957, specifically, to knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce and foreign commerce, in criminally derived property of a value greater than $10,000, said property being derived from specified unlawful activity, that is, forced labor, in violation of Title 18, United States Code, Section 1589, in violation of Title 18, United States Code, Section 1957.

## THE MANNER AND MEANS OF THE CONSPIRACY

53.     The manner and means used to accomplish the objective of the
conspiracy included, among others, the following:

a.      As a result of TAYLOR's and BRANNON's commission of
forced labor offenses, in violation of Title 18, United States Code,
Section 1589, TAYLOR and BRANNON caused millions of dollars in
proceeds of those forced labor offenses — in the form of donations — to be
deposited into accounts held in the name of JMMI and KOGGC.

b.      TAYLOR and BRANNON, along with others known to the
grand jury, were authorized signatories on the accounts held in the name of
JMMI and KOGGC.

c.      TAYLOR and BRANNON used the proceeds of the forced
labor offenses and deposited into JMMI/KOGGC accounts for monetary
transactions:

i. to support TAYLOR's extravagant lifestyle; and

ii. to enrich BRANNON.

d.      For example, TAYLOR and BRANNON conspired to purchase
and purchased, among other things, a boat, luxury cars, ATVs, and jet skis
via monetary transactions, while knowing that these monetary transactions
involved criminally derived property and which transactions in fact involved

18

proceeds of forced labor offenses, committed in violation of Title 18, United

States Code, Section 1589, in amounts greater than $10,000.

   e.  The monetary transactions described in the above two

subparagraphs included the following transactions:

| ITEM | TRANSACTION AMOUNT | ON OR ABOUT DATE |
|---|---|---|
| Mercedes Benz | $63,195.94 | 4/21/2018 |
| Bentley Continental | $70,000 downpayment | 5/04/2018 |
| Crownline Boat | $105,595 | 11/08/2019 |
| Bentley Continental | $15,000 downpayment | 6/29/2020 |
| Bentley Mulsanne | $50,000 downpayment | 6/30/2020 |
| Mercedes Benz | $14,908 | 9/09/2020 |
| Mercedes Benz | $13,695 | 9/09/2020 |
| Mercedes Benz | $12,485 | 9/09/2020 |
| 5 ATVs | $31,805 | 6/17/2021 |
| 2 Jet Skis and 1 Jet Ski Trailer St. Louis Power Sports | $24,332 | 6/17/2021 |
| 2 Jet Skis and 1 Jet Ski Trailer Holzhauer Pro Motorsports | $24,962.20 | 6/17/2021 |
| 125 lbs. of Super Colossal Red King Crab Legs, 6 Seafood Shears, and 30 Crab Cutters | $10,353.44 | 9/30/2021 |
| Rolls Royce Cullinan | $123,028.09 lease signing payment | 5/21/2024 |
| Bulletproof Automotive | $33,930 | 5/31/2024 |
| Bulletproof Automotive | $32,630 | 7/08/2024 |
| Bulletproof Automotive | $37,500 | 7/24/2024 |
| Bulletproof Automotive | $18,302.76 | 2/14/2025 |

All in violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE ALLEGATIONS

(18 U.S.C. § 982(a)(1), 18 U.S.C. § 1594(d))

**D-1 DAVID TAYLOR**
**D-2 MICHELLE BRANNON**

The above allegations contained in this Indictment are included here for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(1) and 18 U.S.C. § 1594(d).

Upon conviction of the offenses set forth in Counts One through Nine of this Indictment, defendants DAVID TAYLOR and MICHELLE BRANNON shall forfeit to the United States, pursuant to 18 U.S.C. § 1594(d)(1) and (2), any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such violation, and any property traceable to such property, pursuant to 18 U.S.C. § 1594(d)(1) and any property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such violation, or any property traceable to such property, pursuant to 18 U.S.C. § 1594(d)(2).

Upon conviction of the offense in violation of 18 U.S.C. § 1956(h), set forth in Count 10 of this Indictment, the defendants DAVID TAYLOR and MICHELLE BRANNON shall forfeit to the United States of America, pursuant to 18 U.S.C.

§ 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

Forfeiture includes, but is not limited to, a forfeiture money judgment against defendants DAVID TAYLOR and MICHELLE BRANNON in favor of the United States, in an amount representing (a) the gross proceeds obtained by each defendant as a result their respective violations of Counts One through Nine of this Indictment and (b) a sum of money equal to the value of the property involved in the respective violations of Count 10 of this Indictment.

If any of the property described above, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1).

THIS IS A TRUE BILL.

s/ *Grand Jury Foreperson*
GRAND JURY FOREPERSON

JEROME F. GORGON JR.
United States Attorney

s/ *John K. Neal*
JOHN K. NEAL
Assistant United States Attorney
Chief, Anti-Corruption Unit

s/ *Sarah Resnick Cohen*
SARAH RESNICK COHEN
Assistant United States Attorney
Homeland Security Unit
211 W. Fort St., Ste. 2001
Detroit, MI  48226
313-226-9100

s/ *Christina Randall-James*
CHRISTINA RANDALL-JAMES
Trial Attorney
Human Trafficking Prosecution Unit
Civil Rights Division
202-598-5701

s/ *Adriana Dydell*
ADRIANA DYDELL
Assistant United States Attorney
Chief, Money Laundering and
Asset Recovery Unit
211 W. Fort St., Ste. 2001
Detroit, MI 48226
313-226-9100

Dated: July 23, 2025

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to con

Case: 2:25-cr-20560
Assigned To : Berg, Terrence G.
Referral Judge: Altman, Kimberly G.
Assign. Date : 7/24/2025
Description: SEALED MATTER (LLH)

## Companion Case Information

This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]:

☐ Yes   ☒ No

**AUSA's Initials:**  *SRC*

**Case Title:** USA v. David Taylor, et al.

**County where offense occurred :** Wayne County and elsewhere

**Check One:**   ☒ Felony        ☐ Misdemeanor        ☐ Petty

✓ Indictment/_____ Information --- **no** prior complaint.
_____ Indictment/_____ Information --- based upon prior complaint [Case number:                    ]
_____ Indictment/_____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

July 23, 2025
Date

*s/ Sarah Resnick Cohen*
Sarah Resnick Cohen
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9637
E-Mail address: sarah.cohen@usdoj.gov
Attorney Bar #:  P51968

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.