CUSTODY

# U.S. District Court
## Middle District of Florida (Tampa)
## CRIMINAL DOCKET FOR CASE #: 8:25−mj−02871−TGW All Defendants

Case title: USA v. Brannon

Date Filed: 08/27/2025

Date Terminated: 08/28/2025

Assigned to: Magistrate Judge
Thomas G. Wilson

**Defendant (1)**

**Michelle Brannon**
*TERMINATED: 08/28/2025*

represented by **Samuel Landes**
Federal Public Defender's Office
400 N Tampa St Ste 2700
Tampa, FL 33602−4726
813−228−2715
Fax: 813−228−2562
Email: Samuel_Landes@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 18:1594.F FORFEITURE, 18:1589.F FORCED LABOR, 18:1956−4999.F MONEY LAUNDERING − FRAUD, OTHER | |

**Plaintiff**

**USA**

represented by **Michael J. Buchanan**
DOJ−USAO
Tampa Division
400 North Tampa Street
Suite 3200
Tampa, FL 33602
813−274−6000
Email: michael.buchanan2@usdoj.gov
*ATTORNEY TO BE NOTICED*

*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/27/2025 | <u>1</u> | Arrest pursuant to Rule 5(c)(2) of Michelle Brannon from the Eastern District of Michigan. (KMN) (Entered: 08/27/2025) |
| 08/27/2025 | <u>2</u> | MOTION for Detention by USA as to Michelle Brannon. (Buchanan, Michael) (Entered: 08/27/2025) |
| 08/27/2025 | <u>3</u> | ***CJA 23 Financial Affidavit by Michelle Brannon. (KMN) (Entered: 08/28/2025) |
| 08/27/2025 | <u>4</u> | Minute Entry for In Person proceedings held before Magistrate Judge Thomas G. Wilson: Initial Appearance as to Michelle Brannon held on 8/27/2025. (DIGITAL) (KMN) (Entered: 08/28/2025) |
| 08/27/2025 | 5 | NOTICE OF HEARING as to Michelle Brannon: Initial Appearance set for 8/28/2025 at 02:30 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (KMN) (Entered: 08/28/2025) |
| 08/28/2025 | 6 | NOTICE of Standing Order Regarding Due Process Protections Act, 3:20−mc−20−TJC, Doc 1 as to Michelle Brannon: Pursuant to the Due Process Protections Act, the Court confirms the United States' disclosure obligation under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to comply with that obligation. Violating this order may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and other sanctions. Signed by Judge Timothy J. Corrigan. (KMN) (Entered: 08/28/2025) |
| 08/28/2025 | 7 | ORAL MOTION to Appoint Counsel by Michelle Brannon. (KMN) (Entered: 08/28/2025) |
| 08/28/2025 | 8 | **ORAL ORDER granting 7 Motion to Appoint Counsel Samuel Landes for Michelle Brannon appointed as to Michelle Brannon (1); granting <u>2</u> Motion for Detention as to Michelle Brannon (1). Signed by Magistrate Judge Thomas G. Wilson on 8/28/2025. (KMN)** (Entered: 08/28/2025) |
| 08/28/2025 | 9 | NOTICE of Standing Order Regarding Due Process Protections Act, 3:20−mc−20−TJC, Doc 1 as to Michelle Brannon: Pursuant to the Due Process Protections Act, the Court confirms the United States' disclosure obligation under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to comply with that obligation. Violating this order may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and other sanctions. Signed by Judge Timothy J. Corrigan. (KMN) (Entered: 08/28/2025) |
| 08/28/2025 | <u>12</u> | Minute Entry for In Person proceedings held before Magistrate Judge Thomas G. Wilson: INITIAL APPEARANCE in Rule 5(c)(3) proceedings held on 8/28/2025 as to Michelle Brannon from the Eastern District of Michigan.. (DIGITAL) (KMN) (Entered: 09/04/2025) |
| 08/28/2025 | <u>13</u> | **ORDER OF DETENTION PENDING TRIAL as to Michelle Brannon. Signed by Magistrate Judge Thomas G. Wilson on 8/28/2025. (KMN)** (Entered: 09/04/2025) |
| 08/28/2025 | <u>14</u> | **COMMITMENT TO ANOTHER DISTRICT as to Michelle Brannon. Defendant committed to the Eastern District of Michigan. Signed by Magistrate Judge Thomas G. Wilson on 8/28/2025. (KMN)** (Entered: 09/04/2025) |
| 08/28/2025 | | NOTICE to Eastern of District of Michigan of a Rule 5 or Rule 32 Initial Appearance as to Michelle Brannon regarding your case number: 25−20560. Using your PACER account, you may retrieve the docket sheet and any documents via the case number link. No documents/record will be sent. If you require certified copies of any documents please send a request to InterdistrictTransfer_FLMD@flmd.uscourts.gov. If you wish the court to use a different email address in the future, please send a request to update your address to InterdistrictTransfer_TXND@txnd.uscourts.gov. (KMN) (Entered: 09/04/2025) |

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
## CLERK'S MINUTES

| CASE NO.: | 8:25-mj-2871-TGW | | DATE: | August 27, 2025 |
|---|---|---|---|---|
| **HONORABLE THOMAS G. WILSON** | | | **INTERPRETER:** | N/A |
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHELLE BRANNON | | | **LANGUAGE:** | N/A |
| | | | **GOVERNMENT COUNSEL**<br>Michael Buchanan, AUSA | |
| | | | **DEFENSE COUNSEL**<br>N/A | |
| **COURT REPORTER:   Digital** | | | **DEPUTY CLERK:** | Karina Nieves |
| TIME | 3:35 PM- 3:54 PM | **TOTAL:** 19 mins | **PRETRIAL** | Jasmine King |
| | | | **COURTROOM:** | 12A |

**PROCEEDINGS: Removal hearing, Rule 5 (Eastern District of Michigan)**

The Court advises the Defendant that it has been unsuccessful in reaching her identified retained counsel.

The Court advises of Defendant's Rule 5 rights and charges.

The Court inquires about said retained counsel.

The Court advises the Defendant that she will remain in custody until a bond hearing is held whether in the Middle District of Florida of the Eastern District of Michigan.

The Court continues to the initial appearance to Thursday, August 28, 2025, at 2:30 PM and contact is made with retained counsel.

Court adjourned.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                    CASE NO.   8:25-mj-02871-TGW
                                 25-20560 (E.D. Mich.)

MICHELLE BRANNON

## **DETENTION MEMORANDUM**

The United States, by and through undersigned counsel, respectfully submits

this memorandum in anticipation of moving, pursuant to 18 U.S.C. §§ 3142(f)(1)(A),

(f)(2)(A), and (f)(2)(B), that the defendant, MICHELLE BRANNON, be detained

pending trial as she is unable to rebut the applicable presumption of detention and

there is no condition or combination of conditions of release that will reasonably

assure her appearance, the integrity of this proceeding, or the safety of any person or

the community.

Section 3142(f)(1)(A) provides a basis for a detention hearing where, as here,

the charged offenses involve a crime of violence, specifically violations of 18 U.S.C. §

1589 (Forced Labor).  18 U.S.C. § 3142(f)(1)(A); *see also* 18 U.S.C. § 3156(a)(4)

(defining "crime of violence" for purposes of the Bail Reform Act to include any

Chapter 77 felony).  In addition, the serious risk that BRANNON will flee and

attempt to intimate victims and witnesses provide additional bases for the

government's request for detention.  18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B).

BRANNON is unable to rebut the presumption of detention that applies under

18 U.S.C. § 3142(e)(3)(D). In addition, an analysis of the factors set forth in 18 U.S.C. § 3142(g) leads to the conclusion that detention is appropriate because there is no condition or combination of conditions that will reasonably assure BRANNON's appearance, the integrity of this proceeding, or the safety of any person or the community. Accordingly, the Court should detain BRANNON pending trial.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

On July 23, 2025, a federal grand jury in the Eastern District of Michigan indicted BRANNON and her co-defendant, David Taylor, on one count of Conspiracy to Commit Forced Labor in violation of 18 U.S.C. § 1594(b) (Count One); five counts of Forced Labor in violation of 18 U.S.C. § 1589 (Counts Two through Seven); and one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h) (Count Ten). Defendant Taylor is charged with an additional two counts of Forced Labor in violation of 18 U.S.C. § 1589 (Counts Eight and Nine).

These charges arise from defendants' roles as principal leaders of Kingdom of God Global Church (KOGGC), formerly Joshua Media Ministries International (JMMI). Taylor is the original founder of JMMI and refers to himself as "Apostle" and Jesus's best friend, claiming that God has given him the "keys to the Kingdom on Earth." BRANNON is Taylor's second-in-command as the Executive Director of KOGGC. Together, since 2013, Taylor and BRANNON have compelled the labor of individuals who joined their organization by prohibited means including force, physical restraint, serious harm, and threats of those actions.

2

## B. KOGGC/JMMI Organization

Taylor's organization operated under the name JMMI from 2008 through 2021 and then KOGGC from 2021 to the present.  Until their arrests on August 27, 2025, Taylor and BRANNON operated call centers that offered prayer and dream interpretation and solicited donations.  Call centers were the main source of revenue for KOGGC/JMMI.  Taylor established his first call center in Taylor, Michigan, over ten years ago.  KOGGC/JMMI has since opened and operated call centers in other locations in the United States including in Missouri, Florida, and Texas.

Taylor and BRANNON orchestrated a forced labor scheme that resulted in KOGGC/JMMI receiving millions of dollars in donations each year through the call centers, much of which Taylor used to purchase luxury properties and vehicles.  In total, KOGGC/JMMI received approximately $50 million in donations since 2014.

## C. Defendants Engaged in a Scheme to Coerce the Named Victims and Other Workers to Provide Labor

KOGGC/JMMI call centers were worked by "full-time" KOGGC/JMMI workers.  Taylor also selected men from the full-time workers to work as his "armor bearers."  Armor bearers worked as Taylor's personal servants, fulfilling Taylor's demands around the clock.  Victims named in Counts Two through Seven of the Indictment worked as full-time laborers; victims named in Counts Eight and Nine of the Indictment worked as armor bearers.

Taylor and BRANNON did not pay any full-time workers—their victims—for their labor. BRANNON, who worked with Taylor to manage the organization and

3

carry out his orders, is one of only three members of KOGGC/JMMI who receive a salary.  The workers were placed into different working groups, such as a media team, a finance team, a call center team, or a music team.  Almost all workers were expected to participate in call center work to assist in bringing in monetary donations.  BRANNON supervised and managed the workers—the victims of their scheme—and taught them how to successfully solicit donations for KOGGC/JMMI.

As part of the defendants' scheme to coerce the workers' labor, they used various methods of fraud to establish trust and loyalty and to keep the workers laboring in hopes of an eventual payoff.  Taylor first lured in workers with promises of filling their spiritual hunger, making them feel intensely loved and special through "love bombing," and promising them a unique closeness to God by serving God through KOGGC/JMMI.   Taylor promised that, through faithful service and entering a "20-year process," what workers most desired would be given to them. BRANNON parroted these promises in staff meetings.  Taylor and BRANNON taught members that (1) Taylor is God's best friend and his second-in-command; (2) God will bring his Kingdom on Earth through Taylor; and (3) being a full-time staff member is the only way to ensure your place in the Kingdom and to become ready to encounter God face-to-face as Taylor does.  Taylor and BRANNON also both made other significant fraudulent promises to their workers which never materialized.

Once Taylor and BRANNON drew the workers in, they then took control over every aspect of the workers' lives.  Taylor and BRANNON physically and mentally weakened the workers by subjecting them to daily public humiliation and

psychological abuse, imposing excruciating work hours—sometimes more than 20 hours per day—resulting in severe sleep deprivation, housing them in cramped quarters without privacy or adequate bedding, and, in some instances, withholding food and medical care. Taylor and BRANNON controlled where and when the workers slept, when and what they ate, what they wore, how they spoke, and when they could go to the bathroom. They insisted that workers give up outside employment, making them wholly reliant on KOGGC/JMMI for food and shelter.

They also forbade relationships and punished workers for disobeying this rule, thereby isolating them from other staff and ensuring that their primary loyalty to KOGGC/JMMI was not compromised. In addition, Taylor and BRANNON isolated workers from the outside world by breaking up marriages and other relationships, forcing them to block family that questioned defendant Taylor and his teachings, and establishing grueling work hours that left them almost no time to have contact with anyone outside of KOGGC/JMMI. Taylor and BRANNON physically and mentally wore down the workers' will to resist or to question what Taylor and BRANNON told them. Their conduct made the workers, the victims, more vulnerable and, therefore, easier to exploit.

As Taylor and BRANNON gained control over and weakened the workers, they also used a combination of means to create a climate of fear through psychological manipulation and physical violence that caused the workers to fear serious harm if they made a mistake, complained, did not meet monetary quotas, or left KOGGC/JMMI.

5

First, Taylor and BRANNON used physical violence to intimidate and control. Specifically, the defendants sometimes assaulted workers when the actions or behaviors of workers were not consistent with the rules instituted by Taylor and/or BRANNON. While much of the physical abuse was directed towards men, women witnessed and heard about the assaults and feared assault as a possible consequence. This abuse helped create a climate of fear in which the workers feared physical violence for any type of noncompliance.

Second, Taylor and BRANNON also used further sleep deprivation and withholding food for failure to meet monetary quotas, as additional means of instilling a climate of fear.

Third, Taylor and BRANNON both fostered this climate of fear by frequently "rebuking" workers when they did not follow a rule or meet an expectation imposed by Taylor or BRANNON. Rebuking involved yelling at workers, standing inches from their face, calling them wicked and demanding that they get on their knees and repent, reminding them of the ultimate consequence of failure to comply: eternal damnation. Taylor and BRANNON issued many of these punishments in a public forum, berating and name-calling individual workers in front of the entire staff as a warning to others. These rebukings were both humiliating and terrifying. During a rebuking, Taylor, BRANNON, or a worker (as instructed by Taylor or BRANNON), got inches from the face of another worker and screamed at them, calling them names like stupid, dumb, wicked, n***a, Lucifer, etc. Many times, workers were forced to kneel and repent to Taylor and God. Rebukings could last a few minutes to

6

a few hours depending on the situation. The rebukings, sometimes coupled with the threat of being "put out" into a garage or a homeless shelter, constituted psychological coercion designed to compel the workers' labor. And as the result of the defendants' actions, workers truly feared that burning in hell or meeting with some catastrophic end would be the consequence of defying defendant Taylor in any way.

This power to condemn or "curse" the workers was particularly potent in establishing a climate of fear. Though the workers lived in constant fear of punishment, they were even more afraid of being deemed a "traitor." Through his sermons and teachings, Taylor directly instilled in them a deep fear that those who left suffered tragic consequences and the threat of eternal damnation. He repeatedly told stories of this occurring to others, tying it to Biblical passages where those chosen by God had such powers to call down God's judgment. And BRANNON parroted these threats in worker meetings and rebukings.

Since approximately 2020, Taylor has not been living at any of the call centers, so Taylor began exclusively using cell phones to communicate with KOGGC/JMMI workers. BRANNON was instructed and entrusted by Taylor to carry out his orders and punishments. Taylor and BRANNON frequently communicated their orders and punishments via text messages. The text messages received by workers from BRANNON included the following messages:

- On or about October 6, 2020, at 5:31am, BRANNON sent a text message to several members of the "media team" including V-3,

7

stating, "Media team no going to sleep until the Mosaic video is done!"

- On or about May 30, 2022, at 7:10 am, BRANNON, unhappy with the manner in which a worker was solicitating donations, sent a text stating, "Did you rebuke him for this ?? He needs to be raked over the coals for this ?? He can die for this  !!"

- On or about October 19, 2022, at 11:46pm, BRANNON texted to a group including V-2, "FROM APOSTLE WARNING . . . TENT AND GARAGE JUDGMENT STARTING TONIGHT FOR 7 DAYS IF AFTER 7 – 14 Days There is no change it's the public shelter for 1 solid month."

- On or about October 20, 2022, at 4:57pm, BRANNON texted to a group including V-2, "WARNING FROM APOSTLE . . . TOP 6 YOUR LOW NUMBERS EACH DAY . . . IT HAS TO STOP NOW . . You will be punished constantly until you obey and train your heart and mind to obey the training . . ."

As this sampling of texts demonstrates, BRANNON adeptly used the climate of fear she and TAYLOR created, as well as other prohibited means, to compel the labor and services of the workers, their victims.  Through this forced labor scheme, Taylor and BRANNON have grossed approximately $50 million since 2014.

**D. Defendants Laundered the Proceeds of their Forced Labor Scheme to Enrich Themselves**

KOGGC/JMMI obtained millions of dollars in donations each year by subjecting its workers to forced labor. Taylor and BRANNON used proceeds of the forced labor offenses that were deposited into the KOGGC/JMMI accounts listed below for monetary transactions of value greater than $10,000, in violation of 18 U.S.C. § 1956(h) (Money Laundering Conspiracy). Taylor and BRANNON were authorized signatories on these bank accounts.

| Bank Account | Authorized Signatories or Named Individual |
|---|---|
| JMMI US Bank Acct #xx75 | David Taylor, Michelle Brannon, and two others known to the grand jury |
| Michelle Brannon US Bank Acct#xx58 | Michelle Brannon |
| JMMI Regions Bank Acct#xx73 | Michelle Brannon and one other known to the grand jury |
| KOGGC Chase Bank Acct#xx55 | Michelle Brannon and one other known to the grand jury |
| JMMI PayPal Acct#xx72 | David Taylor's name associated with PayPal Account |

Taylor and BRANNON used JMMI/KOGGC funds obtained by forced labor to support Taylor's extravagant lifestyle and to enrich BRANNON. Taylor and BRANNON conspired to purchase and did purchase, among other items, a boat, luxury cars, ATVs, and jet skis. Some examples of monetary transactions greater than $10,000 are shown in the chart below:

9

| ITEM | TRANSACTION AMOUNT | ON OR ABOUT DATE |
|---|---|---|
| Mercedes Benz | $63,195.94 | 4/21/2018 |
| Bentley Continental | $70,000 downpayment | 5/04/2018 |
| Crownline Boat | $105,595 | 11/08/2019 |
| Bentley Continental | $15,000 downpayment | 6/29/2020 |
| Bentley Mulsanne | $50,000 downpayment | 6/30/2020 |
| Mercedes Benz | $14,908 | 9/09/2020 |
| Mercedes Benz | $13,695 | 9/09/2020 |
| Mercedes Benz | $12,485 | 9/09/2020 |
| 5 ATVs<br>St. Louis Power Sports | $31,805.00 | 6/17/2021 |
| 2 Jet Skis and a jet ski trailer<br>St. Louis Power Sports | $24,332.00 | 6/17/2021 |
| 2 Jet Skis and a jet ski trailer<br>Holzhauer Pro Motorsports | $24,962.20 | 6/17/2021 |
| 125 lbs. of Super Colossal Red King Crab Legs, 6 Seafood Shears, and 30 Crab Cutters | $10,353.44 | 9/30/2021 |
| Rolls Royce Cullinan | $123,028.09 lease signing payment | 5/21/2024 |
| Bulletproof Automotive (custom work on the Rolls Royce Cullinan) | $33,930 | 5/31/2024 |
| Bulletproof Automotive (custom work on the Rolls Royce Cullinan) | $32,630 | 7/08/2024 |
| Bulletproof Automotive (custom work on the Rolls Royce Cullinan) | $37,500 | 7/24/2024 |
| Bulletproof Automotive (custom work on the Rolls Royce Cullinan) | $18,302.76 | 2/14/2025 |

These purchases benefited BRANNON as well as Taylor.  For example, in a video dated on or about July 11, 2020, obtained from Taylor's iCloud account data, BRANNON thanks Taylor for her new car as the video shows the black Bentley Continental purchased on June 29, 2020.

# MEMORANDUM OF LAW

## A. Applicable Law and Presumption in Favor of Detention

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts "shall" order a defendant's detention pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Section 3142(f) "establishes when the court should hold a detention hearing, while 18 U.S.C. § 3142(g) contains the factors to be considered by the court in determining whether to detain the defendant." *United States v. Govani*, 2025 U.S. Dist. LEXIS 137025, at *16 (M.D. Fl. July 18, 2025). Pursuant to 18 U.S.C. § 3142(f)(1), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence, a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct or attempt to obstruct justice. 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A)-(b). In this case, the charged crimes of Conspiracy to Commit Forced Labor and Forced Labor are both Chapter 77 felony offenses and, accordingly, crimes of violence under the Bail Reform Act. 18 U.S.C. §§ 3156(a)(4)(C), 1589, and 1594. Furthermore, there is a serious risk that BRANNON will flee and that BRANNON will attempt to intimidate victims and witnesses, as discussed below. 18 U.S.C. §§ 3142(f)(2)(A)-(b).

Under § 3142(e)(3)(D), a presumption in favor of detention exists in this case. That is, where a court finds probable cause in cases involving a Chapter 77 offense "for which a maximum term of imprisonment of 20 years or more is proscribed," the

11

court "shall . . . presume[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. §§ 3142(e)(3)(D). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Here, the charged crimes that trigger this presumption are Conspiracy to Commit Forced Labor and Forced Labor, both of which are Chapter 77 offenses that carry a maximum term of imprisonment of 20 years. 18 U.S.C. §§ 1589(d), 1594(b).

This presumption "can be overcome where the defendant 'comes forward with evidence to meet his burden of production—that is, evidence to suggest that he either is not dangerous or not likely to flee if turned loose on bail.'" *United States v. Valcourt*, 2025 WL 1220044, at *10 (S.D. Fl. Apr. 25, 2025) (quoting *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985)); *see also United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (stating that the presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption"). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relative to factors listed in section 3142(g)." *Quartermaine*, 913 F.2d at 916 (quotation omitted). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects

12

Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

If the defendant rebuts the presumption, the Court must consider the following factors to determine whether there are conditions of release that would reasonably assure the appearance of the defendant as required and the safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Court applies a preponderance of the evidence standard in determining whether the defendant poses a flight risk and a clear and convincing standard in determining whether the defendant poses a danger to the community. *United States v. Medina*, 776 F.2d 1398, 1402 (11th Cir. 1985).

Because there is no condition or combination of conditions that will reasonably assure her appearance, the safety of any other person and the community, or the integrity of this proceeding, BRANNON should be detained.

13

### 1. Nature and Circumstances of Charged Offenses

When considering the nature and circumstances of the charged offenses, one factor a court takes into account is "whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). In this case, as discussed above, the charged forced labor offenses are crimes of violence under the Bail Reform Act. 18 U.S.C. § 3156(a)(4). In addition, the nature and circumstances of the charged forced labor offenses involve an extensive scheme, devised and carried out by Taylor and BRANNON to obtain the unpaid labor of the victims in the Indictment and many other workers through prohibited means including force, threats of force, and coercion. BRANNON also is charged with laundering the money obtained through the forced labor scheme. Taylor and BRANNON were leaders and organizers of these schemes. The charged offenses required intelligence, planning, sophistication, a disregard for the physical and psychological well-being of others, and a willingness to use religious belief to prey on others for their own personal financial gain. Taylor has spent over a decade pretending to be a religious renunciate and scamming people out of money, in partnership with BRANNON, while living a life of luxury. The serious nature and circumstances of the charged forced labor and money laundering offenses weigh in favor of detention.

### 2. Weight of the Evidence

"In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant." *United States v. Whisler*, 2025 U.S. Dist. LEXIS 157256, at *6 (N.D. Fl.

14

Aug. 14, 2025) (citations omitted). "While it is true that the Court's determination of this factor neither requires nor permits a pretrial determination of guilt, the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *Id.* (quotations omitted). Where, as here, the evidence against a defendant is strong and credible, there is an increased "risk that the defendant will flee to avoid future court proceedings" and such evidence "may indicate that the defendant is a present danger to himself or the community[.]" *Id.* at *6-7; *see also United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her provided a strong incentive to abscond). In addition, a "defendant facing a substantial term of imprisonment has commensurate incentive to flee insofar as the cost of taking his chances at trial is great in comparison to the cost of fleeing." *United States v. Ingram*, 415 F. Supp. 3d 1072, 1085 (N.D. Fla. 2019); *see also United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.")

In this case, the evidence detailed in the Indictment is overwhelming. The government has interviewed the eight individuals named in the Indictment who were victimized by Taylor and BRANNON. And their accounts are corroborated by many other witnesses; financial records; thousands of text and other electronic messages between Taylor and BRANNON, KOGGC/JMMI workers, and the named victims; and recordings of other communications and meetings between the

15

defendants and others.

In addition, the charged offenses—eight separate counts—each carry a statutory maximum penalty of 20 years in prison.  The base offense level for Forced Labor is 22 under U.S.S.G. § 2H4.1(a)(1).  With the likely applicable enhancements, the government's initial estimated calculation of BRANNON's offense level, as of today's date, is 34. The corresponding sentencing range is 151 to 188 months in prison.  Under U.S.S.G. § 2S1.1(a), the offense level for the charged Money Laundering Conspiracy is that of "the underlying offense from which the laundered funds were derived."  In this case, the underlying offense is Forced Labor. Accordingly, the government's initial estimated calculation of the offense level for the Money Laundering Conspiracy, as of today's date, is 34.  Based on these calculations, BRANNON would face a significant prison sentence upon conviction

Thus, the strength of the evidence and the lengthy sentence BRANNON faces show that she has a strong incentive to flee to avoid future court proceedings.

### 3.  History and Characteristics of the Defendant

BRANNON, who is 55 years old, is unmarried and has two adult children. BRANNON has no employment outside the criminal organization KOGGC.  She does not have significant family or community ties to the Eastern District of Michigan where this case is being prosecuted. Her significant ties, during the course of this conspiracy, have been solely to where the call centers have operated including in Texas, Missouri, and Florida.  Most recently, on or about June 26, 2025, BRANNON submitted a name change request in the state of Florida to change her

name back to her maiden name of Michelle Denise Lynn.  BRANNON also changed her home address from 14380 North Freeway, Houston, Texas, to 706 Guisando De Avila, Tampa, Florida.  Neither address is in Michigan and both are known call centers of KOGGC.

Although BRANNON does not have any prior criminal convictions, she has been engaging in a continuous course of criminal conduct that terrified her victims for approximately the past twelve years.

In addition to her lack of ties to the Eastern District of Michigan, BRANNON has access to funds to flee. Although BRANNON will no longer have access to KOGGC funds due to the government's seizure of KOGGC accounts, BRANNON has access to many financial platforms that allow individuals and businesses to send and receive money, both domestically and internationally, including Cash App, Venmo, PayPal, and Wise.  BRANNON also has access to three credit cards.

Cash App is a mobile payment service that allows individuals to send and receive money.  BRANNON had access to an account created on March 20, 2018. This account is identified with BRANNON's name and Social Security Number. An address associated with the account is 706 Guisando De Avila in Tampa, Florida.  BRANNON also had access to a second Cash App Account created on or around November 20, 2020.  This account is identified in the names of MICHELLE BRANNON and KOGGC.

Venmo is a social payment app that allows users in the United States to send and receive money via the app.  BRANNON had access to a Venmo Account in the

17

name of MICHELLE BRANNON created on February 20, 2021.  BRANNON also had access to a second Venmo Account in the names of MICHELLE BRANNON and KINGDOM OF GOD GLOBAL CHURCH (KOGGC) which was created on February 20, 2021.

PayPal is an online payment system and digital wallet that allows individuals and businesses to send and receive money through the platform.  BRANNON had access to a personal PayPal account in the name of MICHELLE BRANNON which was created on June 9, 2024.  BRANNON also had access to a second PayPal Account in the names of MICHELLE BRANNON and KOGGC which was created on February 20, 2021.

Wise is a global financial technology company that allows individuals and businesses to send and receive money internationally in many different currencies. KOGGC registered and created multiple accounts with Wise on August 7, 2022. BRANNON is listed as the company shareholder/director on the account information documents obtained from Wise and may have access to these accounts.

BRANNON also has access to multiple credit cards that would allow BRANNON to make purchases and take cash advances:

(1) BRANNON has access to a Chase Bank credit card account in the current names of MICHELLE LYNN and KOGGC which was opened on or around June 12, 2024. The account lists a current address of Guisando De Avila, Tampa, Florida 33613.  The credit limit on this account is $150,000.  This account also has a $7,500 cash advance limit.

18

(2) BRANNON has access to a CareCredit credit card account with Synchrony Bank. This account was opened on or around November 10, 2020. The credit limit on the account is $10,000.

(3) BRANNON has access to Capital One credit card account in the name of David Taylor and JMMI which was opened on May 16, 2016. BRANNON obtained a credit card to utilize the account with card number ending in #2255 and her email address michellebrannon1@yahoo.com is associated with this credit card account. The card has a $2,000 credit limit.

In addition to her direct access to financial platforms and credit, BRANNON has made a career over the last decade of raising high dollar amounts by soliciting money from others; KOGGC/JMMI has acquired approximately $50 million in donations over the past twelve years with her as its financial leader and instructor. BRANNON's history and success in raising and laundering funds means she can easily use her skills and utilize the KOGGC network to raise funds for her to flee.

For all of the aforementioned reasons, this factor also weighs in favor of detention.

### 4. Nature and Seriousness of the Danger to Any Person or the Community

"Danger to the community" under § 3142(g) does not only refer to the risk of physical violence; instead, it encompasses any danger that the defendant might engage in criminal activity detrimental to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases); *United States v.*

*Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."). In addition, "obstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (rejecting defendant's argument, in a white-collar crime case, that her attempts to influence the testimony of a witness did not constitute the type of danger to the community that would support detention).

In this case, BRANNON has spent approximately twelve years playing a leadership role in an intense and intimidating forced labor conspiracy as well as a fairly sophisticated money laundering conspiracy. *See Ingram*, 415 F. Supp. 3d at 1080 ("Defendant's affiliation with and leadership of a conspiracy also is relevant to an analysis of the risk of danger to the community and . . . risk of flight. . . . Leaders of criminal organizations pose a greater danger to the community. Through concerted activity, they can act through co-conspirators."). BRANNON's actions include the abuse of KOGGC/JMMI workers through manipulation and coercion and, at times, physical violence.

In addition, for twelve years, BRANNON has loyally followed Taylor's instructions and teachings. His teachings include encouraging self-inflicted violence and violence against others, including law enforcement, when and if his organization is confronted by law enforcement. Significantly, Taylor has attempted to convince

20

the workers to commit acts of violence against themselves or others and Taylor has made promises to punish and "get rid of" those who do not serve him. During a meeting with workers, Taylor identified the Michigan Attorney General's Office and stated, "God will kill officials" and "like I told you the other day, they gonna be in here with their FBI jackets on . . . You don't scare me. God's gonna to get you. And I am going to make sure he do, too. I am going to make sure I speed it up." Taylor further stated, "I'm going to be looking at you in Hell and you are going to be having your little FBI jacket on. Who gonna save you then? The American government is not going to save you. They cannot save you. Not from this government I serve. You think they are protecting you, who is going to protect you after you leave here? They are not going to protect you. Not in my realm, not in the realm that I govern. I have been given power by the only one who counts. We will watch you burn and the flesh melt off of your bones."

Taylor has talked about physically stopping individuals who interfere with him. For example, he said to workers, "This probably prophetic. God having me say this to you [name omitted of a member], but I'm just telling you. And I think I'm probably gonna hire some security or something too. But I am just telling you, you kill them on contact if they come in here with that foolishness you understand? They need to die. They come in with an "AKA" or those guns, these niggas be carrying in Houston and they come in trying to shoot up. Listen, do not hesitate!" The workers responded in unison, "Yes, Sir!"

Furthermore, during Taylor's meetings and online broadcasts, he often used

21

words like "war" and "battle;" he has claimed he is preparing "soldiers;" and listed his text thread as "military bootcamp."  On more than one occasion, Taylor has referred to himself as a "General" and says he is training the "end time army."

Thus, given BRANNON's own reign of terror over her victims, her close personnel and criminal relationship with Taylor, and her years of following his directions with fierce loyalty, she is a danger to the community if released.

## **CONCLUSION**

All the factors outlined in 18 U.S.C. § 3142(g) weigh strongly in favor of detention, and BRANNON is unable to overcome the presumption of detention that applies in this case.  Thus, the United States respectfully requests that the Court detain BRANNON pending trial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

*/s/ Sarah Resnick Cohen*
SARAH RESNICK COHEN
Assistant United States Attorney
Eastern District of Michigan
Homeland Security Unit
Human Trafficking Coordinator
211 W. Fort St., Ste. 2001
Detroit, MI  48226
313-226-9100
Sarah.cohen@usdoj.gov

*/s/ Christina Randall-James*
CHRISTINA RANDALL-JAMES
Trial Attorney
Human Trafficking Prosecution Unit
U.S. Department of Justice
Civil Rights Division
202-598-5701
Christina.Randall-James@usdoj.gov

*/s/ Michael J. Buchanan*
Michael J. Buchanan
Assistant United States Attorney
Fla. Bar No 1020224
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
Michael.Buchanan2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CLERK'S MINUTES**

| CASE NO.: | 8:25-mj-2871-TGW | | DATE: | August 28, 2025 |
|---|---|---|---|---|
| **HONORABLE THOMAS G. WILSON** | | | **INTERPRETER:** | N/A |
| | | | **LANGUAGE:** | N/A |
| UNITED STATES OF AMERICA | | | **GOVERNMENT COUNSEL** Michael Buchanan, AUSA | |
| v. | | | | |
| MICHELLE BRANNON | | | **DEFENSE COUNSEL** Samuel Landes, AFPD | |
| **COURT REPORTER:** Digital | | | **DEPUTY CLERK:** | Karina Nieves |
| TIME | 2:40 PM - 2:44 PM | **TOTAL:** 4 mins | **PRETRIAL** | Jasmine King |
| | | | **COURTROOM:** | 12A |

**PROCEEDINGS: Removal hearing, Rule 5 (Eastern District of Michigan)**

Defendant provided with copy of indictment.

Court advises of Defendant's Rule 5 rights and charges.

Financial affidavit submitted.

Oral motion for counsel. Motion granted and the Court appoints the Public Defender's Office.

Identity waived.

Oral Order of Due Process.

**Detention:**
Government: Seeking detention.

Defendant: Reserves the right to a seek conditions of release in the charging district.

Court: The Defendant is ordered detained and remanded to USMS.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                              CASE No. 8:25-mj-2871-TGW

MICHELLE BRANNON

_____


## ORDER OF DETENTION


THIS CAUSE came on to be heard at the time of the defendants' initial appearance.   For the following reasons, the defendant should be detained without bail.

The defendant has been charged with counts to conspire to commit forced labor and multiple counts of forced labor. The government requested that the defendant be detained. The defendant did not challenge the government's request for detention at this time but requested, and were granted, the right to have the matter of bail reconsidered in the charging district.

It is, therefore, upon consideration,

ORDERED:

1.　　That defendant, MICHELLE BRANNON, shall be **DETAINED** without bond.

2.　That the defendant is hereby COMMITTED to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3.　　That the defendant shall be afforded reasonable opportunity for private consultation with counsel.

4.　That the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to the United States Marshal for the purpose of appearing in court.

DONE and ORDERED at Tampa, Florida, this <u>28th</u> day of August 2025.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

Case 2:25-mj-20560-TGW-GA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

**MICHELLE BRANNON**

COMMITMENT

TO ANOTHER DISTRICT

CASE NO.   8:25-MJ-2871- TGW

| CHARGES | | |
|---|---|---|
| Charging Document | Statute | Charging District |
| Indictment | 18:1594 (b), 18: 1589 18:1956 (h) | Eastern District of Michigan |
| | | 25-20560 |
| Description:   Conspiracy to Commit Forced Labor, Forced Labor, Money Laundering Conspiracy | | |

| PROCEEDINGS |
|---|
| BOND STATUS:  Reserved right to seek conditions of release in charging district. |
| COUNSEL:     Public Defender appointed for limited appearance. |
| Other:         N/A |
| INTERPRETER:  N/A |

| TO: THE UNITED STATES MARSHAL |
|---|
| You are hereby commanded to take custody of MICHELLE BRANNON and to transport the defendant with a certified copy of this Commitment Order forthwith to the Charging District and there deliver him to the United States Marshal for that District or to some other officer authorized to receive the defendant. |

Thomas G. Wilson
United States Magistrate Judge

August 28, 2025

| RETURN | | |
|---|---|---|
| Commitment Order Received: | Place of Commitment: | Date Defendant Committed: |
| Date | United States Marshal | By Deputy Marshal |