Caution
As of: December 1, 2025 9:23 PM Z

# United States v. Johnson

United States Court of Appeals for the Sixth Circuit

January 4, 2022, Filed

File Name: 22a0003n.06

Case No. 20-5873

**Reporter**
2022 U.S. App. LEXIS 360 *; 2022 FED App. 0003N (6th Cir.); 2022 WL 35406

UNITED STATES OF AMERICA, Plaintiff-Appellee, v. SHAMAIN MAURICE JOHNSON, Defendant-Appellant.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** Motion granted by *United States v. Johnson, 2022 U.S. App. LEXIS 4887 (6th Cir., Feb. 23, 2022)*

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE.

*United States v. Johnson, 2019 U.S. Dist. LEXIS 120017, 2019 WL 3231382 (M.D. Tenn., July 18, 2019)*
*United States v. Johnson, 2019 U.S. Dist. LEXIS 103481, 2019 WL 2543505 (M.D. Tenn., June 20, 2019)*

## Core Terms

district court, argues, cocaine, text message, suppress, pulled, seized, blocked, reconsideration motion, charged offense, offenses, sentence, intrinsic, show of authority, approached, kilograms, relevant conduct, quantities, seizure, reasonable suspicion, crack cocaine, Guidelines, driver, reasonable person, parking lot, distribute, girlfriend, witnessed, messages, drugs

**Counsel:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Ahmed Azzaam Safeeullah, Office of the U.S. Attorney, Nashville, TN.

SHAMAIN MAURICE JOHNSON, Defendant - Appellant, Pro se, Manchester, KY.

For SHAMAIN MAURICE JOHNSON, Defendant - Appellant: Terra L. Bay, Law Office, Chattanooga, TN.

**Judges:** Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

**Opinion by:** McKEAGUE

## Opinion

**McKEAGUE, Circuit Judge**. Shamain Johnson was convicted at trial on one count of possession with intent to distribute crack cocaine and a variety of other drugs. After taking into account a prior incident where police found him in possession of two kilograms of powder cocaine, the district court sentenced Johnson to 168 months in prison, his recommended Guidelines maximum. He appeals, arguing that the district court erred in failing to suppress evidence collected in violation of the *Fourth Amendment*, erred in admitting impermissible character evidence at trial, and erred in calculating his sentence. For the reasons set forth below, we AFFIRM the judgment of the trial court.

I.

In 2017, Shamain Johnson and a codefendant were indicted and charged with five counts related [*2] to four drug seizures that occurred between July 2015 and February 2017. Johnson was implicated in four of the five counts. Johnson filed motions to suppress evidence seized from traffic stops in July 2015, August 2016, and February 2017 (the Wal-Mart stop). The district court heard testimony and argument and granted motions to suppress for evidence seized in the July 2015 stop and the February 2017 Wal-Mart stop, denying suppression

of the evidence from August 2016. As a result, the district court dismissed two counts of the indictment and severed the codefendants for trial.

A.

On February 13, 2017, Metro-Nashville Police Department Detectives Moore and Irwin were monitoring a Wal-Mart parking lot in Madison, Tennessee, looking for drug activity. They regularly monitored this parking lot, which they knew to be a "common place . . . for narcotic activity," based on their experience and calls from Wal-Mart employees. R. 397 P. 3242, 3443-44, 3250-51.

The detectives saw Johnson's car drive up and park next to a red pickup truck in an open area of the parking lot. The detectives witnessed Johnson's car and the red truck next to each other for about ten seconds before the two vehicles drove to a busier [*3] part of the lot. The detectives found all of this to be suspicious and decided to watch the cars closely. The two parked on opposite sides of the aisle, and the driver of Johnson's car got out and entered the store. The detectives observed the driver of the truck getting out and walking over to Johnson's car, briefly speaking with Johnson on the passenger side, and then walking around and getting in the driver's seat.

At this point, the detectives drove up perpendicularly behind Johnson's car blocking it in the parking space. The detectives were driving an unmarked car with disguised lights, which they engaged. Detectives Irwin and Moore got out of their car and approached Johnson's car on either side. As Detective Moore exited his vehicle, he witnessed Johnson and the driver of the red truck turn toward one another and saw their hands move back and forth across the center console. While Moore shut the door to his vehicle, he witnessed money in Johnson's left hand and a silver plastic bag in his right. When Moore approached, Johnson noticed him for the first time and shoved the baggie into his waistband.

At this point, concerned that Johnson had a weapon, Detective Moore unholstered [*4] his gun and ordered Johnson out of the car. While Detective Moore was walking Johnson, handcuffed, to the police car, Johnson reached his hand around to the front of his waistband. A scuffle ensued, and Johnson threw a baggie under the detectives' car. Detective Moore recovered the baggie containing 8.3 grams of cocaine base and 1.7 grams of heroin.

The district court initially determined that the evidence from the Wal-Mart deal should be suppressed. It found that the detectives did not have reasonable suspicion at the time they pulled their vehicle in behind Johnson's, blocking him in. The government then filed a motion to reconsider, which the district court granted, determining that it had erred by finding that Johnson was seized when his car was blocked. It vacated its prior opinion.

B.

Johnson then went to trial on a two-count superseding information based on the August 2016 incident and the February 2017 Wal-Mart incident. At trial, Johnson was acquitted on the first count and was found guilty on the second.

Relevant to this appeal, prior to trial, the government sought to introduce text messages between Johnson and his girlfriend. There were two sets of text messages offered. One [*5] set included several where he was addressed as 'Shamain' and sent photos of himself, offered to prove authenticity. The other set related to an argument between Johnson and his girlfriend over possible infidelity that occurred eight to ten days before the Wal-Mart incident. These messages were quite profane and crude. In the messages, he mentioned that "I kept [my] pack up there," referring to storing drugs near his genitals. R. 400, P. 3884-91. He also said he had "three sells still waiting" as a defense to her accusation that he was sleeping with other women. R. 400, P. 3884-91. In response, his girlfriend described him as "out here mak[ing] jail choices" in reference to his drug business and ambition to be rich. R. 400, P. 3884-91.

Johnson objected to the introduction of these messages under *Rule 404(b)*. Johnson argued that the graphic and profane nature of the messages made them unfairly prejudicial and that they were not probative of criminality. The district court denied his request, finding that they qualified as background evidence and in any event were allowed under *Rule 404(b)(2)*. However, the court did present a limiting instruction to the jury. The court instructed the jury to consider the text [*6] message evidence "only as it relates to the government's claim on the defendant's intent or plan. You must not consider it for any other purpose." R. 400, P. 4008.

C.

The district court directed the Probation Office to prepare a Presentence Investigation Report (PSR) that recommended a total offense level of 22 and a criminal history category of IV, with an advisory guideline range

of 63-78 months. Both parties objected. The government argued that the drugs seized in the July 2015 stop—two kilograms of powder cocaine—should be counted as relevant conduct.

At sentencing, the government argued that the July 2015 seizure was connected to the offense of conviction. Its witness explained that transporting large quantities of cocaine and selling small quantities were not mutually exclusive. It also presented text messages taken off of phones seized with the two kilograms. These texts included messages from Johnson to his codefendant about selling the bulk purchase in small quantities.

The government also offered proof of additional drug-related incidents. While on bond from the first arrest, he was stopped in October 2015 with several rocks of crack cocaine and a set of digital scales with drug [*7] residue. In March 2016, Johnson was seen by officers in a hand-to-hand drug transaction, and officers seized cash and cocaine base. In August 2016, Johnson sold crack cocaine and heroin to a woman. Later that month, he sold heroin to three other individuals and was stopped again by officers who found more rocks of crack cocaine in his car. In November, he was stopped yet again, and more cocaine was found in his car. The same thing happened in December 2016, and again in January 2017. During Johnson's arrest on a kidnapping charge in April 2017, officers stopped a driver who informed them that he had purchased crack cocaine from Johnson.

The court determined that the possession of two kilograms was relevant conduct. It therefore found that Johnson had a Total Offense Level of 30 and a Criminal History Category of IV after considering the § 3553(a) factors, and sentenced him to 168 months, his guideline maximum.

Johnson then brought this appeal.

II.

Johnson makes three arguments on appeal. First, he argues that the district court erred in denying his motion to suppress evidence collected from the Wal-Mart stop. Second, he argues that the district court improperly admitted the text messages between [*8] him and his girlfriend. Third, he argues that the district court improperly calculated his sentence. We address these arguments in turn.

A. Motion to Suppress

Johnson argues that the district court improperly denied his motion to suppress by erring in its determination of when he was seized for purposes of the Fourth Amendment. He also raises a procedural objection to the district court's granting of the government's motion to reconsider on the same issue.

1. Seizure

"This Court has explained that there are three types of permissible encounters between the police and citizens: '(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if nonconsensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.'" United States v. Gross, 662 F.3d 393, 398 (6th Cir. 2011) (quoting United States v. Waldon, 206 F.3d 597, 602 (6th Cir. 2000)). We review de novo whether the facts establish a seizure or detention in violation of the Fourth Amendment. Id. (citing Waldon, 206 F.3d at 602).

The parties do not dispute whether an investigative detention took place. They differ on when it began. Johnson argues that he was detained when the police pulled their cruiser in behind the car where he was seated. The [*9] government agrees with the district court, arguing that Johnson was not detained until the detectives approached the car, alerting Johnson to their presence.

The question of when Johnson was seized matters for the district court's analysis of reasonable suspicion. The district court found that there was adequate reasonable suspicion when the police approached Johnson's window after they had seen concrete evidence of a drug deal taking place. In its earlier ruling that was vacated on the motion to reconsider, the district court found insufficient reasonable suspicion to support detention at the point that officers pulled behind Johnson's car, blocking him.

Johnson argues that he was "seized" right at the point that the detectives pulled their vehicle behind his. A Fourth Amendment "seizure" can "take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." Torres v. Madrid, 141 S. Ct. 989, 995, 209 L. Ed. 2d 190 (2021) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Johnson's argument rests on the "show of authority" part of this test (not the "physical force" part). For that nonphysical conduct to rise to the level of a "seizure," two things must occur. Police

officers must make the required "show of the authority" and the suspect must then [*10] "compl[y] with the demand." Id. (citing *California v. Hodari D., 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)*). Here, we can reject Johnson's argument because the officers had not even engaged in the required show of authority when they blocked in his car, so we need not identify the precise point at which he should be found to have actually submitted to their authority.

The required show of authority exists only if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Gross, 662 F.3d at 399* (quoting *United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)*). This show-of-authority test is, importantly, an objective standard. *See Hodari D., 499 U.S. at 628* ("[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."). This "allows police to determine in advance whether the conduct contemplated will implicate the *Fourth Amendment*." *Michigan v. Chesternut, 486 U.S. 567, 574, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988)*. The correct focus here is therefore on the actions of the detectives, and the extent to which those actions would have made a reasonable person in Johnson's place feel that they were unable to leave. This inquiry requires courts to consider "all of the circumstances surrounding [*11] the incident." *Mendenhall, 446 U.S. at 554*.

Although this is a close issue, we hold that the officers did not make the required show of authority until they had approached Johnson's vehicle with guns drawn after witnessing a suspected drug transaction. In several cases, we have held that a defendant was seized when their car was blocked in by a police vehicle. *See United States v. Bloodworth, 798 F. App'x 842, 845 (6th Cir. 2019)*; *Gross, 662 F.3d at 399-400*; *United States v. See, 574 F.3d 309, 313 (6th Cir. 2009)*. But in each of these situations, although the blocking of the vehicle was the most significant aspect of the police officer's show of authority, there were other factors not present in this case at the time the officers pulled in behind the defendant. In *Gross*, in the early morning, the officer pulled in behind the defendant's vehicle parked in an apartment lot in a marked police car and shined a spotlight into the defendant's car. *662 F.3d at 396-97*. In *See*, at around 4:30 am, the officer pulled his marked car directly in front of the defendant's vehicle in clear view of the driver and passengers. *574 F.3d at 312*. In *Bloodworth*, the officer pulled into a private driveway during the evening in a marked cruiser, blocking in a car that had just pulled into that driveway as he approached. *798 F. App'x at 843-44*.

Here, the officers pulled in behind Johnson's car in an unmarked car. Although they had engaged their disguised [*12] lights, the officers had stopped perpendicular to Johnson's car. The district court found that this fact made it "essentially impossible" for those in Johnson's car to see the lights. They were in a public parking lot during the daytime at an open business, where it is not uncommon to be briefly blocked by a waiting car perpendicular to a parked car's bumper. At the time the detectives pulled in behind Johnson, a reasonable person may not have understood that this was a show of police authority at all. It was when the officers approached with guns drawn—mere seconds after pulling their car in—when the show of authority by police became unambiguous. *Cf. United States v. Williams, 525 F. App'x 330, 333 (6th Cir. 2013)* (considering the officer's approach on foot when deciding that a stop was compulsory where the officer had partially blocked the defendant's car in). The officers approached on either side of the vehicle, making it clear at that point that a reasonable person would not feel free to leave. Even if Johnson's egress by vehicle was already blocked, it was at this point that it became objectively apparent that Johnson was not free to leave, even on foot.

Because we conclude that the stop began when the officers had approached Johnson's vehicle, [*13] and because Johnson does not argue that there was an insufficient basis for reasonable suspicion at that point, we need not examine the sufficiency of reasonable suspicion.

2. Motion to Reconsider

Johnson raises an additional procedural objection related to his motion to suppress. He argues that it was wrong for the district court to have granted the government's motion to reconsider his motion to suppress. Motions to reconsider do not exist in the Federal Rules of Criminal Procedure but are not uncommon. *See, e.g., United States v. Ibarra, 502 U.S. 1, 5-7, 112 S. Ct. 4, 116 L. Ed. 2d 1 (1991)* (per curiam). To the extent we review motions to reconsider in criminal cases, we rely on "analogous precedent arising under the Federal Rules of Civil Procedure." *United States v. LaDeau, 734 F.3d 561, 572 n.3 (6th Cir. 2013)*.

Such motions to reconsider are reviewed for abuse of discretion. *United States v. Lawrence, 308 F.3d 623, 627 (6th Cir. 2002)*. A motion for reconsideration may be granted when there has been "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)*.

We agree that a trial court should be "extremely reluctant" to reopen a suppression hearing. *United States v. Stennis, 457 F. App'x 494, 502 (6th Cir. 2012)*. We are, however, not left with "a definite and firm conviction that the trial court committed a clear error of judgment" by granting this [*14] motion to reconsider. *United States v. Isaiah, 434 F.3d 513, 519 (6th Cir. 2006)* (quoting *United States v. True, 250 F.3d 410, 422 n.9 (6th Cir. 2001)*). The district court explained that in its initial legal determination, it had relied, at least in part, on the government's colloquy with Detective Irwin at the suppression hearing. In that colloquy, the court asked him whether a person was seized when the police activated their lights. Thereby the court mistakenly determined that the time of seizure was not a disputed issue. In doing so, it corrected its own error. It did not abuse its discretion in doing so.

B. Admitting Text Messages at Trial

Johnson also argued that the district court erred by admitting text messages over his *Rule 404(b)* objection. The district court rejected Johnson's objection, concluding the evidence was admissible as background evidence of the charged offense, or under *Rule 404(b)(2)* as evidence of Johnson's intent and plan to distribute drugs. This court generally reviews an objection to an evidentiary ruling for an abuse of discretion. *United States v. Sumlin, 956 F.3d 879, 888 (6th Cir. 2020)*. We must be "firmly convinced that a mistake has been made" to find an abuse of discretion. *Id.*

As a threshold matter, the court must determine whether the text messages were intrinsic (also known as background or res gestae) evidence. Intrinsic evidence "consists of [*15] those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)*. "If evidence is intrinsic, then *Rule 404(b)* does not apply. *Id.*; *see also United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995)*. Intrinsic evidence must have a "causal, temporal or spatial connection with the charged offense." *Id.* Intrinsic acts form "part of a single criminal episode" with the offense charged. *Barnes, 49 F.3d at 1149*.

Johnson argues that the text messages were not intrinsic evidence because they were not introduced as part of the testimony explaining what occurred in the Wal-Mart parking lot. He also argues that the evidence is not probative of a specific sale—the charged offense—but rather of an ongoing conspiracy. The government argues that the conversations show planning and preparation to complete the charged offense, and that it was temporally connected with and probative of the charged conduct.

The district court did not abuse its discretion in finding that this evidence is intrinsic to the charged offense. To be sure, the text messages are physically removed from the events that took place at Wal-Mart. But they form "part of a single criminal episode" when viewed alongside [*16] the charged offense. First, the text messages occurred within days of the Wal-Mart sale. Second, they describe planning and preparation for drug sales. *See United States v. Gonzalez, 501 F.3d 630, 640 (6th Cir. 2007)* (holding that conversations between defendants regarding driving a drug car "establishes a continuing pattern of illegal activity that is intrinsic to the charged offense" of possession with intent to distribute). Third, they also include information probative of the manner in which Johnson carried out his crime. Johnson responded to the Detective's stop in the Wal-Mart parking lot by stuffing a baggie of drugs into his crotch and he discusses the same in the text messages with his girlfriend.

Because we conclude that the district court did not err in finding the evidence intrinsic to the charged offense, we need not decide whether *Rule 404(b)* would otherwise cover it.

C. Calculation of Sentence

Finally, Johnson argues that the district court erred by including two kilograms of cocaine in the combined drug weight when calculating his sentence, thereby miscalculating his offense level and Guidelines range. This is a challenge to the procedural reasonableness of his sentence. *See United States v. Bradley, 897 F.3d 779, 784 (6th Cir. 2018)*. When reviewing sentencing proceedings, we examine factual findings [*17] for clear error and the application of the Guidelines to those facts de novo. *United States v. Rayyan, 885 F.3d 436, 440 (6th Cir. 2018)*.

The district court included the two kilograms of cocaine seized in 2015 as "relevant conduct" to the amounts of cocaine and heroin sold in 2017. R. 402 4071. The government argues that the appropriate standard for reviewing whether activity is considered "relevant conduct" is clear-error review. We have previously recognized "conflicting caselaw in this circuit about whether a district court's determination that 'certain activity qualifies as relevant conduct under *§ 1B1.3(a)(2)*' constitutes a factual finding or a legal conclusion." *United States v. Caballero-Lazo, 788 F. App'x 1014, 1015 (6th Cir. 2019)* (quoting *United States v. Shafer, 199 F.3d 826, 830 (6th Cir. 1999)*). Because we find that this activity is relevant even under de novo review, we need not decide the issue today.

The Guidelines define relevant conduct as conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction." *U.S.S.G. § 1B1.3(a)(2)*. To ascertain whether an offense is part of the same course of conduct, the court must analyze "[1] the degree of similarity of the offenses, [2] the regularity (repetitions) of the offenses, and [3] the time interval between the offenses." *U.S.S.G. § 1B1.3, cmt. n. 5(B)(ii)*. These factors are examined on a sliding scale such that if one is absent, a stronger [*18] showing is required of at least one of the others. *Id.*; *see also United States v. Hill, 79 F.3d 1477, 1482 (6th Cir. 1996)*. To be part of a common scheme or plan, criminal offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *U.S.S.G. § 1B1.3, cmt. n. 5(B)(i)*. Although these tests have "considerable overlap," they are distinct. *See Hill, 79 F.3d at 1482-83*.

Johnson argues that the two kilograms of cocaine do not qualify as part of the same course of conduct as the 2017 distribution. First, he argues that the different quantities undermine the similarity between the two offenses. Second, he argues that the time interval between the two offenses—19 months—is too great.

His arguments are unavailing. He is correct that quantity is relevant to the degree of similarity. *See, e.g., Caballero-Lazo, 788 F. App'x at 1016* (differentiating large amounts of methamphetamine and a small amount of cocaine). But the government offered witnesses who explained that dealers sometimes buy in bulk and resell in small quantities. Indeed, text messages showed plans to distribute the bulk amount in small quantities. Regarding timing, he points to *Hill*, where we held that two possession offenses separated by over a year were unconnected. *79 F.3d at 1480-85*. But [*19] in *Hill*, there was also no regularity or strong similarity. *Id. at 1484-85*. Here, the two offenses are temporally separated, but linked by an astonishing number of drug-related offenses, almost all of which are related to cocaine distribution. *See United States v. Gilbert, 173 F.3d 974, 978 (6th Cir. 1999)* (holding older distribution offenses relevant to current distribution offenses with three-year time gap, where the defendant engaged in a consistent pattern of distributing crack cocaine); *United States v. Miller, 910 F.2d 1321, 1323, 1327 (6th Cir. 1990)* (holding, under clear-error review, that regular purchases and sales of cocaine over a 20-month period constituted relevant conduct).

Taken together, the district court properly determined that Johnson's possession of two kilograms of cocaine was part of the same course of conduct as his distribution charge. His sentence was therefore procedurally reasonable.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**End of Document**